Yao v. Garland

BIA
Ling, IJ
A205 617 554

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of November, two thousand twenty-four.

PRESENT:
> JON O. NEWMAN,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

JI YANG YAO,
> *Petitioner,*

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

23-6060
NAC

_____

**FOR PETITIONER:**    Zhong Yue Zhang, Zhang & Associates, LLC, Flushing, NY.

**FOR RESPONDENT:**    Brian M. Boynton, Principal Deputy Assistant Attorney General; Sarah A. Byrd, Senior Litigation Counsel; Stephanie L. Groff, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Ji Yang Yao, a native and citizen of the People's Republic of China, seeks review of a December 27, 2022, decision of the BIA affirming a November 4, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Ji Yang Yao*, No. A205 617 554 (B.I.A. Dec. 27, 2022), *aff'g* No. A205 617 554 (Immig. Ct. N.Y. City Nov. 4, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered both the IJ's and the BIA's opinions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review the agency's factual findings for substantial evidence, and we review questions of law de novo.

2

*See Hongsheng Leng v. Mukasey*, 528 F.3d 135, 141 (2d Cir. 2008). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The agency did not err in finding that Yao failed to demonstrate a well-founded fear of persecution based on his activities with the China Democracy Party ("CDP") in the United States. Absent past persecution, an applicant may establish eligibility for asylum by demonstrating a "well-founded fear of future persecution," "which requires that the alien present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004); *see also* 8 C.F.R. § 1208.13(b)(2). To do so, an applicant must show either a "reasonable possibility" that he would be "singled out" for persecution or that the country of removal has a "pattern or practice" of persecuting "similarly situated" individuals. 8 C.F.R. § 1208.13(b)(2)(i), (iii). Where, as here, an asylum applicant's fear is based on activities in the United States, he "must make some showing that authorities in his country of nationality are either aware of his activities" or a "reasonable possibility" that they will become aware of his activities. *Hongsheng Leng*, 528 F.3d at 143.

3

The agency did not err in concluding that Yao failed to meet his burden. Yao testified that he joined the CDP in 2011 in the United States. He participated in protests at the United Nations and the Chinese consulates in New York and Washington, he gave a speech at one protest, he assisted in mailings sent to "the people's representative committee in China" and "universities and colleges" "advertis[ing] ideas and policies of the CDP," he took "democracy classes," and he received "[o]ver 20" awards for "participation," and became a "rate 6 official for the infiltration of democracy department." Certified Administrative Record at 100, 103–04, 106 (Tr.), 244–45 (Written Statement).

He feared returning to China because the CDP is "defined as a hostile organization," and he had learned in his classes and online of several CDP members who have been arrested. And he submitted letters from his wife and mother stating that Chinese authorities had asked them about his involvement with the CDP, and told them they knew he had attended protests and published an article. Yao also submitted untranslated group photographs of CDP protests and mailing events, but he did not allege that he was in the photographs or identifiable in them; a "Members' Website" profile that included his name and photographs of him at protests and mailing events; and the 2018 U.S. State

4

Department Human Rights Report on China, which provides that "[a]uthorities censored and manipulated the press and the internet," "[t]hose who . . . posted sensitive comments online, remained subject to punitive measures," and the CDP "remained banned, and the government continues to monitor, detain, and imprison current and former CDP members."

Despite this evidence, the agency did not err in concluding that Yao did not establish an objectively reasonable fear of persecution. The agency can accept an applicant's testimony as credible about his activities, but conclude that it insufficient to meet his burden of proof for asylum. *See Garland v. Ming Dai*, 593 U.S. 357, 371 (2021). The activities Yao describes – mailings, group protests, and the publishing of one article – are not "high profile." *Y.C. v. Holder*, 741 F.3d 324, 335 (2d Cir. 2013). That he is listed by name and photograph on the CDP website is insufficient to establish a reasonable likelihood that the Chinese government is aware of those pages amidst the entirety of the internet. *Id.* at 336–37 (finding that "a member page on the CDP website that identifies [petitioner] by name, displays his head shot, and includes links to photographs of him participating in protests and stuffing envelopes" was insufficient to establish that Chinese government was or would likely become aware of his activities). And the agency

5

did not err in declining to credit the letters from his wife and mother. *Id.* at 334 (concluding that the agency did not err in declining to credit letters from an applicant's family in China that alleged government awareness of U.S. activities because the declarants were interested parties unavailable for cross-examination). Given the low-level political activities that Yao was engaged in and the agency's reasonable decision not to credit the letters from China, the agency did not err in finding Yao's fear speculative. *Id.*; *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

The agency also did not err in finding that Yao failed to establish a pattern or practice of persecution in China of similarly situated activists. *In re A-M-*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005) (defining a pattern or practice of persecution as the "systemic or pervasive" persecution of a group); *see also* 8 C.F.R. § 1208.13(b)(2)(iii). Yao's evidence of arrests of political dissidents was about prominent dissidents active within China. He did not have documentary evidence that China has arrested dissidents "without any positions in CDP" for their overseas activities upon return to China. Accordingly, he failed to show that he was similarly situated to the individuals targeted for persecution. *See Y.C.*, 741

6

F.3d at 334–35 (concluding that petitioner failed to establish a pattern or practice of persecution of similarly situated people where he had engaged in only non-"high profile" work in the United States like "clean[ing] and fil[ing] papers . . . and publish[ing] a single editorial," and where evidence reflected arrests of China-based dissident with a leadership role in the CDP); *Lianping Li v. Lynch*, 839 F.3d 144, 150–51 (2d Cir. 2016) (finding that petitioner failed to establish a pattern or practice of persecution of returning Chinese citizens who had joined the CDP in the United States).   Moreover, even crediting Yao's allegation that a handful of individuals engaged in political activism outside of China had been arrested, such isolated incidents would be insufficient to establish a well-founded fear.   *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157 (2d Cir. 2008) (noting that the Supreme Court has "cited approvingly to a one-in-ten example of persecution to illustrate the sort of reasonable possibility that would demonstrate a well-founded fear" (quotation marks omitted)).

In sum, the agency did not err in concluding that Yao failed to establish that the Chinese government was or would become aware of his CDP activities in the United States.   *See Y.C.*, 741 F.3d at 334–35; *Hongsheng Leng*, 528 F.3d at 142–43. That finding was dispositive because Yao's failure to show a well-founded fear for

7

asylum means that he "necessarily" failed to meet the higher burdens for withholding of removal and CAT relief.  *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010).

For the foregoing reasons, the petition for review is DENIED.  All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court